

**U.S. BANKRUPTCY COURT**

**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**

**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 9, 2015**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| EARNEST DAVID FIELDING, AND | § | CHAPTER 13 |
| LINDA KAY FIELDING, | § | |
| | § | CASE NO.: 13-43212-DML-13 |
| DEBTORS. | § | |
| | § | |

### AMENDED MEMORANDUM OPINION AND ORDER

Before the court is the *Limited Objection of IRS to Motion and Notice of Intention to Sell Debtor's* [sic] *Homestead (305 Canyon Creek Trial, Fort Worth, TX) Free and Clear of All Liens, Claims, and Encumbrances* (docket no.[1] 136, the "Objection to Motion to Sell"). By the Objection to Motion to Sell, the IRS objected to, among other things, the manner in which Debtors proposed

---

[1] "Docket no. __" shall hereinafter refer to documents filed in the above-captioned bankruptcy case (the "Case").

to allocate the proceeds received from the sale of their Homestead[2] to their IRS debt.[3] On September 22, 2014 the court entered the *Order Approving Debtor's Motion and Notice of Intention to Sell Debtor's Homestead (305 Canyon Creek Trail, Fort Worth, TX) Free and Clear of All Liens, Claims, and Encumbrances and to Shorten Notice to 14 Days* (docket no. 141, the "Order") to facilitate the sale of Debtors' Homestead, but ordered that the proceeds, which Debtors proposed to pay to the IRS be paid into the Registry of the United States Bankruptcy Court until further order of the court. Order at 2.

On October 8, 2014, Debtors filed the *Brief in Support of the Designation of Payments to the IRS* (docket no. 151, the "Brief") seeking further guidance from the court with respect to the proceeds. That same day, the court heard argument (the "Hearing") from Debtors' counsel and the opposing party, the IRS, (collectively, the "Parties") regarding the disposition of the proceeds and took the matter under advisement. After consideration of arguments put forth at the Hearing, as well as the pleadings and authorities filed by the Parties, the court has reached the following conclusions.

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(A), (L), and (O). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014, 7052.

---

[2] Debtors' homestead is located at Lot 9, Block 32, Woodhaven Country Club Estates Addition to the City of Fort Worth, Tarrant County, TX also known as 305 Canyon Creek Trail, Fort Worth, TX 76112 (the "Homestead"). *See* Debtors' Schedule C, docket no. 1.

[3] Obj. to Motion to Sell at 2. Initially, Debtors sought to apply the proceeds "first to the secured (taxes, penalty and interest as set forth in the IRS' Amended Proof of Claim on December 15, 2014) claim for the tax year ending on 12/31/2011, then to the tax year ending 12/31/2008, then to the tax year ending 12-31-2007." *See Motion and Notice of Intention to Sell Debtor's* [sic] *Homestead (305 Canyon Creek Trial, Fort Worth, TX) Free and Clear of All Liens, Claims, and Encumbrances and to Shorten Notice to 14 Days)* (docket no. 129, the "Motion to Sell").

## I. Background

On July 15, 2013, Debtors filed a petition in this court for relief under chapter 13 of the Bankruptcy Code.[4] Debtors filed their chapter 13 plan on that same day (docket no. 2). The standing chapter 13 trustee and the IRS objected to Debtors' Plan, which was never confirmed. On January 13, 2014 Debtors filed an amended chapter 13 plan (docket no. 48, the "Amended Plan"), to which the trustee and IRS objected. Through the Amended Plan, Debtors have proposed to sell assets, both exempt and non-exempt, to reduce the debt owed to the IRS. Amended Plan at 11. The Plan has not yet been confirmed.

On September 5, 2014 Debtors filed the Motion to Sell. In the Motion to Sell, Debtors requested the court to approve the sale of their Homestead, the Proceeds of which were to be applied to debt owed to the IRS.[5] On September 17, 2014, the IRS filed its Amended Claim against Debtors in the amount of $539,885.26.[6] The IRS has a lien for the secured amount of the Amended Claim against all of Debtors' real and personal property. Brief ¶ 5.

On September 18, 2014, the IRS filed the Objection to Motion to Sell, objecting to the manner in which Debtors proposed to distribute the Proceeds. In doing so, the IRS argues that it has the right to allocate payments received in satisfaction of the Amended Claim in accordance with its existing policies and procedures. Shortly thereafter, the court issued the Order. The Order

---

[4] 11 U.S.C. §§ 101 *et seq.* (the "Code").

[5] The remaining balance of the Homestead proceeds— after payment of the mortgage, ad valorem taxes, real estate commission, closing costs associated with the sale, and a $5,000 moving allowance to Debtors —was approximately $127,881.00 (the "Proceeds"). Order at 2.

[6] Specifically, Claim #1-3 (the "Amended Claim") consists of a secured claim of $327,296.72, a priority unsecured claim of $33,501.00, and a general unsecured claim of $179,087.54. Amended Claim, Docket no. 136. Initially, the IRS filed the first Proof of Claim (Claim #1-1) on July 19, 2013 in the amount of $520,063.90. The IRS subsequently filed an Amended Proof of Claim (Claim #1-2) on January 15, 2014 in the amount of $539,885.26, which was comprised of a secured claim of $505,886.26, a priority unsecured claim of $33,501.00, and a general unsecured claim of $498.00. Docket no. 62.

effectively transferred the lien the IRS had on the Homestead to the funds held in the registry of the court. The Brief followed.

## II. Discussion

The Brief presents the court with the issue of whether a debtor may apply, at his or her own discretion, proceeds from the sale of an exempt asset to tax debt owed to the IRS. Debtors urge they may allocate the funds as they choose[7]; Debtors believe to hold otherwise would frustrate the overall purpose of selling an asset to pay down secured debt as well as jeopardize the success of their Amended Plan, as they would continue to incur penalties and interest. The IRS renews its objections from the Objection to Motion to Sell and maintains it has the right to apply payments to portions of debt according to its existing policies and procedures.[8] The IRS also suggests, in any event, that Debtors' payment of the Proceeds is not "voluntary" and that only "voluntary" payments may be subject to designation at Debtors' discretion.

### A. Applicability of Energy Resources to a Chapter 13 Case

In 1990, the Supreme Court held that a bankruptcy court had authority to order the IRS to apply tax payments made by chapter 11 debtor corporations as designated by such debtor corporations, when the designation was necessary to effectuate a successful reorganization. *United States v. Energy Res. Co., Inc.*, 495 U.S. 545 (1990). Debtors suggest the holding and rationale in *Energy Resources* is applicable to their chapter 13 Case, effectively allowing the court to order the IRS to apply the Proceeds as Debtors choose to allocate them. Brief ¶¶ 12, 19. The IRS does not

---

[7] Debtors would have the payments allocated in the following manner: first, to the income tax amount due for the 2003 tax year (without penalties and interest); second, to the income tax due for the 2004 tax year (without penalties and interest); third, to the income tax amount due for the 2007 tax year (without penalties and interest). Debtors ask that no proceeds be applied to penalty, interest, priority, or unsecured portions of the debt until these amounts have been paid. Brief ¶¶ 6, 7.

[8] The IRS has indicated that its existing policy is to apply payments to the oldest tax liability, including the penalties and interest associated with that liability. Obj. to Motion to Sell at 2-3.

believe such a broad interpretation is appropriate and would limit the holding in *Energy Resources* to the case's facts.

In *Energy Resources*, the Court considered two cases involving debtor corporations that had filed for reorganization under chapter 11 of the Code. One of the debtor corporations had an approved plan with a provision allowing the corporation to apply its tax payments to first extinguish the "trust fund"[9] portion of the debt before the payment of the non-trust fund portion. *Energy Resources*, 495 U.S. at 547. The other debtor corporation had similarly created a trust through its confirmed plan to pay federal tax debt. *Id*. at 547-48. The trustee of the trust successfully petitioned the bankruptcy court to order the IRS to apply the payments to trust fund debt. Both cases were consolidated on appeal by the First Circuit, which held bankruptcy courts "had the authority to order the IRS to apply an 'involuntary' payment made by a chapter 11 debtor to trust fund tax liabilities if the Bankruptcy Court concluded that this designation was necessary to ensure the success of the reorganization." *Id*. at 548. The Supreme Court affirmed, avoiding the issue of whether the payment was "voluntary" or "involuntary," which will be addressed in a subsequent section of this opinion. *Id*. at 548-49.

Both the case at bar and *Energy Resources* involve reorganizations under the Code, albeit in different chapters. As stated in *Energy Resources*, both debtor corporations' plans of reorganization involved provisions providing for the allocation of payments to trust fund debt before paying off remaining tax debt. The manner in which Debtors wish to designate and pay their tax debts are aligned with those of the debtor corporations in *Energy Resources*. Specifically,

---

[9] Trust fund taxes are income and social security taxes withheld from employee paychecks by employers. This money is said to be held "in trust" for the United States until they are paid to the government. 26 U.S.C. §§ 3102(a), 3402(a). *Compass Marine Servs., Inc. v. United States (In re Compass Marine Servs., Inc.)*, 276 B.R. 765, 768 (Bankr. E.D. La. 2002).

the Amended Plan provides that "Debtors intend to sell assets against which IRS has a lien in order to pay the secured and priority claims of IRS." Amended Plan at 11.

The Court found reason for its holding in *Energy Resources* in sections 105 and 1123 of the Code, stating "these statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *Id.* at 449 (citations omitted). Specifically, section 105(a) states—

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Section 1123(b) provides that—

> (b) Subject to subsection (a) of this section, a plan may—
> …
> (5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; and
>
> (6) include any other appropriate provision not inconsistent with the applicable provisions of this title.

11 U.S.C. § 1123(b)(5), (6).

Thus, the Court determined that the Code gives bankruptcy courts authority to approve reorganization plans, including those that contain provisions not expressly recognized in the Code. It should be noted that section 105(a) encompasses the ability of bankruptcy courts in any chapter, not specifically a chapter 11. Therefore, the Court's analysis with respect to section 105(a) seems to apply to the case at bar. Additionally, as Debtors point out, the Code includes a similar provision

to section 1123(b)(6) that is applicable to chapter 13 cases. Brief ¶ 20. Section 1322(b)(11) is the equivalent to 1123(b)(6) and states that a chapter 13 plan may include also any provision not inconsistent with another section of title 11. 11 U.S.C. § 1322(b)(11).

This court would not be the first to find that *Energy Resources* applies more broadly to cases with plans of reorganization. *See In re Klaska*, 152 B.R. 248, 251 (Bankr. C.D. Ill. 1993) ("Certainly, Chapter 13 is a reorganization chapter, and *Energy Resources* refers generally to 'reorganization plans' … Accordingly, the Court finds that *Energy Resources* is applicable to Chapter 13."); *In re Simms*, 177 B.R. 537, 539 (Bankr. N.D. Ohio 1994) ("This Court has no reason to believe that the holding in *Energy Resources* would not apply in some Chapter 13 cases."). While there have been decisions which limit the holding of *Energy Resources* to its facts,[10] this court does not believe it is appropriate to do so.[11] However, simply finding that *Energy Resources* applies to a case under chapter 13 does not end the inquiry. In the case at bar, Debtors' Amended Plan has not yet been confirmed. By contrast, each of the plans before the Court in *Energy Resources* which provided for the allocation of payments to the IRS was a confirmed plan. While this distinction was not raised by the Parties, the court believes that it warrants further discussion.

---

[10] *See United States v. Pepperman*, 976 F.2d 123, 128-31 (3d Cir. 1992); *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1468-70 (10th Cir. 1992); *United States v. Kare Kemical, Inc. (In re Kare Kemical, Inc.)*, 935 F.2d 243, 244-45 (11th Cir. 1991).

[11] Indeed, other courts and commentators have been hesitant to make this distinction. *See, e.g.*, *In re Klaska*, 152 B.R. at 251; *In re Simms*, 177 B.R. at 539.

> "[C]ases have held, or at least implied, that *Energy Resources* should only apply in a case in which (a) there is a plan of reorganization, (b) the court finds that allocation of payments is necessary for the debtor to reorganize, and (c) the payments are made pursuant to the plan. This is an overly strict reading of *Energy Resources*, which did not limit its holding to the particular facts before it."

Stephen W. Sather, *Tax Issues in Bankruptcy*, 25 ST. MARY'S L.J. 1363, 1414 (1994).

At the outset, the court notes the inherent differences between a plan proposed under chapter 11 as opposed to one proposed under chapter 13. For example, a plan proposed by a chapter 11 debtor must be circulated to every holder of a claim or interest allowed under section 502 of the Code who may then chose to accept or reject such proposed plan.[12] Chapter 13 does not impose a voting requirement, though secured creditors may vote to accept a plan. Moreover, a chapter 11 debtor may not make payments—outside of those approved by the court—prior to the confirmation of a proposed plan. By contrast, a chapter 13 debtor must begin making payments in the amount proposed by the plan not later than 30 days after filing such plan.[13] Section 1326(a)(1)(A) of the Code provides:

> *Unless the court orders otherwise*, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
>
> (A) proposed by the plan to the trustee.[14]

Thus, while a chapter 11 debtor may only make payments in accordance with a confirmed plan, a chapter 13 debtor must make payments under a proposed plan even prior to confirmation.[15]

---

[12] 11 U.S.C. § 1126(a).

[13] 11 U.S.C. § 1326(a)(1)(A); *Perez v. Peake*, 373 B.R. 468, 485 (S.D. Tex. 2007) ("section 1326(a) requires that the Chapter 13 debtor begin making payments called for by the plan within thirty days of filing the plan"); *In re Acevedo*, 497 B.R. 112, 119 (Bankr. D.N.M. 2013) ("The Court finds the ordinary and natural meaning of the phrase 'the amount proposed by the plan to the trustee' is whatever amount will be paid to the trustee under the plan.").

[14] 11 U.S.C. § 1326(a)(1)(A) (emphasis added).

[15] In enacting section 1326 of the Code, Congress explained:

> Under present law, payments under a chapter 13 plan frequently do not begin until the plan is confirmed. This sometimes takes several months or longer. Unfortunately, when the payments do not begin promptly, the debtor becomes accustomed to living on money that will not be available once the plan becomes operational; and it may be very difficult for the debtor to scale down expenditures once the plan begins. Indeed, chapter 13 trustees report that there is much greater incidence of compliance with the plan when payments begin promptly, and prompt commencement is required . . . .

S. REP. No. 98-65, at 15-16 (1983).

While this bridges the gap between *Energy Resources* and the case at bar, the court notes that section 1326(a)(1)(A) directs a chapter 13 debtor to make payments "in the amount proposed by the plan *to the trustee*."[16] As the Parties are aware, Debtors paid the Proceeds into the Registry of the Bankruptcy Court and not to the trustee. Therefore, the question becomes whether section 1326(a)(1) governs payments made, in accordance with a proposed plan, into the Registry of the Bankruptcy Court?

Although a strict reading of section 1326(a)(1)(A) requires that a debtor make payments in the amount proposed by the plan *to the trustee*, a closer reading of the statute does not require a debtor to be so constrained. Indeed, section "1326(a)(1) begins with the language 'unless the court orders otherwise.' That language precedes all of section 1326(a)(1) and allows a court to revise the requirement that the debtor make pre-confirmation payments directly to a secured creditor" or otherwise.[17] The phrase "unless the court orders otherwise" appears throughout the Bankruptcy Code. *See, e.g.*, 11 U.S.C. §§ 349(a) and (b), 363(c)(1), 521(a)(1)(B), 1108, and 554(c) and (d). "In interpreting those statutes, courts have held that the phrase 'unless the court orders otherwise' grants a bankruptcy court discretion." *In re DeGroot*, 484 B.R. 311, 320 (6th Cir. 2012) (citing cases). In this Case, the court ordered otherwise. In the Order, the court indicated that the Proceeds "will be paid into Registry of the United States Bankruptcy Court to be held pending further Order of this Court" rather than to the trustee or directly to a secured party. Order at 2. Given that the legislative intent behind section 1326(a)'s enactment was to preserve funds of the estate for ultimate distribution to creditors, it cannot be said that a court order requiring a debtor to pay proceeds into the registry of the court pending further order of the court is inconsistent with such

---

[16] 11 U.S.C. § 1326(a)(1)(A) (emphasis added).

[17] *Drive Fin. Servs. v. Brown (In re Brown)*, 348 B.R. 583, 590 (Bankr. N.D. Ga. 2006) (citing *In re Beaver*, 337 B.R. 281, 284 n.2 (Bankr. E.D.N.C. 2006)).

provision. In fact, the converse seems to be true. By ordering the amount proposed under the plan to be paid into the Registry of the court, the court, like the trustee, will ensure that such funds will be paid to the appropriate creditor in the correct manner.[18] Therefore, just as a debtor in a chapter 11 case must make payments in accordance with its chapter 11 plan upon confirmation, a chapter 13 debtor must make payments in accordance with its proposed plan even prior to confirmation. However, whether the ultimate distribution of such payments must be in accordance with a debtor's plan is dependent on whether the designation was necessary to effectuate a successful reorganization.

As previously mentioned, the Court in *Energy Resources* held that a bankruptcy court had the authority to order the IRS to apply tax payments made by a debtor as designated by such debtor only when the designation was necessary to effectuate a successful reorganization. *Energy Resources*, 495 U.S. at 546. Thus, the court must now determine whether Debtors' proposed allocation of the Proceeds to the IRS is necessary for an effective reorganization. *Energy Resources*, 495 U.S. at 549.

While Debtors bear the burden of establishing the payment designation is necessary to effectuate a successful reorganization,[19] case law defining and applying the "necessary" standard in accordance with *Energy Resources* is sparse.[20] However, the First Circuit's opinion in *Energy Resources* prior to appeal provides some guidance on the issue. As stated by the First Circuit:

---

[18] In addressing section 1326, the Fifth Circuit has also held that "the designation of the debtor as . . . a disbursing agent is very much a matter left to the considered discretion of the bankruptcy court." *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 486 (5th Cir. 1982).

[19] 11 Collier on Bankruptcy ¶ 15.03[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2014).

[20] *See In re Classic Chem. and Supply Co.*, 198 B.R. 112, 114 (Bankr. E.D.Pa. 1996) ("Subsequent case law formulating and applying standards for determining whether the criteria for allowance of a designation of tax payments have been met is surprisingly sparse."); *In re Compass Marine Servs.*, 276 B.R. at 772 ("The court agrees that the case law is sparse as to defining a standard to be used in determining whether a designation of trust fund taxes is necessary to the success of a plan of reorganization in accordance with *Energy Resources*.").

> Specifically, the bankruptcy court should make the following inquiry: upon consideration of the reorganization plan as a whole, in so far as the particular structure or allocation of payments increases the risk that the IRS may not collect the total tax debt, is that risk nonetheless justified by an offsetting increased likelihood of rehabilitation, i.e., increased likelihood of payment to creditors who might otherwise lose their money?[21]

The First Circuit also noted that allocation should be decided on a "case-by-case basis."[22] Courts have appeared lenient in finding that the designation of certain payments is necessary for an effective reorganization. In *Compass Marine Services*, prior to a chapter 11 plan confirmation, the debtor sold two properties subject to an IRS lien that exceeded the value of the properties.[23] When the debtor requested the court to order the IRS to apply the proceeds from the sale to the trust fund portion of the liabilities prior to the non-trust fund portion, the court found the designation of payments was sufficiently necessary to the reorganization's success.[24] The court reasoned that the risk posed to the IRS in applying payments this way was justified by the debtor's ability to stay in business, pay other creditors, and successfully reorganize through their bankruptcy case.[25] The court specifically recognized that "[a]ll of [debtor's] actions, particularly the sale of real estate in order to reduce the taxes owed to the IRS, significantly increased the probabilities of success of the plan."[26]

---

[21] *IRS v. Energy Resources, Co. (In re Energy Resources, Co.)*, 871 F.2d 233, 233-34 (1st Cir. 1989).

[22] *Id.* at 233.

[23] *In re Compass Marine Servs., Inc.*, 276 B.R. at 766-67.

[24] *Id.* at 772.

[25] *Id.* at 773.

[26] *Id.*

In the case at bar, to achieve success through the reorganization, Debtors must be capable of complying with Amended Plan provisions.[27] To do so, Debtors rely on the sale of assets to reduce the debt owed to the IRS. Amended Plan at 11. Thus, any reduction in the IRS secured claim would not sufficiently correspond with the assets being sold. Debtors would also continue to incur the interest and penalties on the unpaid, secured portion of the debt, further decreasing the Plan's feasibility.[28]

In essence, to apply the Proceeds in the manner suggested by the IRS would potentially lead to a ceaselessly accumulating claim against Debtors for interest and penalties, while simultaneously leaving Debtors without assets to assist in payment of the accumulating claim. Without means to sufficiently comply with the Amended Plan, there is the concomitant probability that other creditors will not be paid through the reorganization and Debtors will not be successful in their reorganization efforts. Additionally, if the IRS receives payment for interest and penalties that have accrued post-petition on their claims, other creditors bear the risk that these additional post-petition debts could cause the Amended Plan to fail. While this risk may not be desirable to the IRS, it is justified by the likelihood of rehabilitation through the Plan to the benefit of all creditors.

To say the IRS' desired outcome would not jeopardize the feasibility of Debtors' Plan and overall success in their Case is misguided.[29] For the reasons described, and in accordance with the

---

[27] "An essential requirement for confirmation of a chapter 13 plan is that 'the debtor be able make all payments under the plan and to comply with the plan.'" Bloomberg Law: Bankruptcy Treatise, pt. VII, ch. 232, at § G.1. (D. Michael Lynn et al. eds., 2014) (citing 11 U.S.C. § 1325(a)(6)).

[28] Feasibility refers to a court's determination of whether a chapter 13 debtor will be able to make all payments under—and comply with—a proposed plan of reorganization. *See* 11 U.S.C. § 1325(a)(6).

[29] The Supreme Court has stated on several occasions that the "principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *See, e.g., Marrama v. Citizens of Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

standards set forth by case law, Debtors may apply the Proceeds to the IRS debt at their discretion because it is necessary to the effective reorganization in the Case.

### B. "Voluntariness" of Payments

According to the IRS, only payments that are voluntarily submitted to the IRS may be subject to designation by the taxpayer.[30] The IRS argues that Debtors may not designate which tax liabilities the Proceeds are to be applied because, according to the IRS, payments made to the IRS by a debtor in bankruptcy are not voluntary.[31]

When the Supreme Court was presented with this issue in *Energy Resources*, the Court held that "whether or not the payments at issue are rightfully considered to be involuntary, a bankruptcy court has the authority to order the IRS to apply the payments [to certain liabilities] if the bankruptcy court determines that [such] designation is necessary to the success of a reorganization plan." 495 U.S. at 548-49. The IRS argues that the holding in *Energy Resources* should be limited to the facts of the case. However, even if the court were to find that *Energy Resources* did not apply in that regard to the case at bar, Debtors would still be able to direct their payments to certain portions of their tax debt because such payments are indeed voluntary.[32]

At least one court has found that it is the "involvement of the court and not the type of bankruptcy which makes payments by a debtor involuntary."[33] Others have rejected this *per se*

---

[30] Obj. to Motion to Sell at 2 (citing *Hannan Trucking, Inc. v. United States (Hannan Trucking, Inc.)*, 17 B.R. 475, 478 (N.D. Tex. 1981)).

[31] Obj. to Motion to Sell at 2.

[32] "To the extent the courts have relied on the voluntary-involuntary dichotomy as a simplified, bright-line rule for determining the right to direct application of tax payments, the rule has proven neither simple and bright, nor just and efficacious." Mark Bernsley, *Energy Resources and Tax Payment Allocations: The Continuing Need to Correct the Analytical Failures of Recent Judicial Precedent*, 21 CAL. BANKR. J. 101 (1993).

[33] *In re Burgess*, 171 B.R. 227, 229 (Bankr. E.D. Tex. 1994) (quoting *In re Frost*, 47 B.R. 961, 964-65 (D.Kan. 1985)). Interestingly, the court in *Frost* relied on *Muntwyler v. United States*, 703 F.2d 1030 (7th Cir. 1983) to support the proposition that "it was the involvement of the court and not the type of bankruptcy which makes payments by a debtor

approach that the filing of a bankruptcy petition effectively characterizes the payment as involuntary. *See, e.g.*, *United States v. A&B (In re A&B Heating and Air Conditioning, Inc.)*, 823 F.2d 462, 466 (11th Cir. 1987), *vacated and remanded for consideration of mootness*, 486 U.S. 1002 (1988); *In re Frank Meador Buick, Inc.*, 85 B.R. 392, 395 (Bankr. W.D. Va. 1988), *rev'd*, 123 B.R. 213 (W.D. Va. 1989), *aff'd per curiam*, 946 F.2d 885 (4th Cir. 1991); *In re B&P Enters, Inc.*, 67 B.R. 179, 183 (Bankr. W.D. Tenn. 1986). It has also been suggested that the characterization of voluntary or involuntary payments stems from action on the part of the IRS, or lack thereof.[34]

"Webster defines the word 'voluntary' as 'proceeding from the will or from one's own choice or consent; acting or done of one's own free will without valuable consideration or legal obligation.'" *In re Hannan Trucking, Inc.*, 17 B.R. at 478. Black's Law Dictionary defines an

---

involuntary." *In re Frost*, 47 B.R. at 964-65. The court believes this is noteworthy because *Muntwyler* is a Seventh Circuit case affirming the U.S. District Court for the Northern District of Illinois' decision to award a taxpayer a refund for overpayment of taxes. 703 F.2d at 1034. Admittedly, the court in *Muntwyler* did state, in dicta, that "[t]he Government *might have been* correct in its claim [that debtor has no right to allocate its payment to the IRS] if the corporation had been in bankruptcy, which it was not." *Id.* at 1034 n.2 (emphasis added).

Moreover, the court in *Muntwyler*—discussing the Tax Court's frequently cited definition of involuntary payments in *Amos v. Commissioner*, 47 T.C. 65, 69 (1966) (discussed *infra*)—held that:

> The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due.

703 F.2d at 1033 (emphasis in original).

Thus, with respect to voluntariness, the court cannot rely on the broad holding in *In re Burgess* to find that "the fact that Chapter 13 is a pure voluntary proceeding is not relevant to whether the payments to the IRS are voluntary" because such proposition simply cannot be found in the authority cited therein.

[34] "It is significant that, while all prior cases applying the voluntary-involuntary dichotomy examined the taxpayer's volition, here the court focused on and was persuaded by IRS action or inaction, i.e., by the absence of a seizure by the IRS, noting that the only action of the IRS was to file a claim." Mark Bernsley, *Energy Resources and Tax Payment Allocations: The Continuing Need to Correct the Analytical Failures of Recent Judicial Precedent*, 21 CAL. BANKR. J. 101, 101 (1993).

involuntary payment as "a payment obtained by fraud or duress." BLACK'S LAW DICTIONARY 1310 (10th ed. 2014). In a frequently cited case, the tax court defined an involuntary payment as "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Amos v. Commissioner*, 47 T.C. at 69 (holding that payments pursuant to a levy are treated as involuntary). However, again, there is little guidance for what constitutes a legal proceeding within the *Amos* case definition and whether a plan of reorganization under the Code fits squarely within the meaning of "involuntary."

Taking into consideration these definitions and in light of the facts presented in the case at bar, this court believes the payments made by Debtors are voluntary for the following reasons.

*1. Chapter 13 is a Voluntary Chapter*

At the outset, the court notes the overriding importance of the voluntary nature of chapter 13. Indeed, Congress carefully drafted the Code to ensure that a debtor could only enter into a case under chapter 13 voluntarily.[35] Moreover, courts have repeatedly recognized the significance of the voluntary nature of chapter 13.[36]

In the case at bar, Debtors were not forced into bankruptcy by the IRS or any other creditor; on the contrary, they filed the Case willingly to address the claims against them. Debtors' decision to file a case under chapter 13 of the Code is an important distinguishing characteristic from any

---

[35] *See Toibb v. Radloff*, 501 U.S. 157, 165-66 (1991) ("Congress' primary concern about a debtor being forced into bankruptcy under Chapter 13: [is] that such a debtor . . . would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition.") (citing H.R. REP. NO. 95-595, at 120)).

[36] *See, e.g.*, *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 661 (5th Cir. 2010) (recognizing the "principle that a debtor cannot be forced involuntarily to proceed under Chapter 13") (citing *In re Harper-Elder*, 184 B.R. 403, 408 (Bankr. D.C. 1995); *Tidewater Finance Co. v. Williams*, 498 F.3d 249, 252 (4th Cir. 2007) ("Congress intended Chapter 13 proceedings to be entirely voluntary"); *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, 620 (2nd Cir. 1999) ("This conclusion reflects the intention of Congress to create an entirely voluntary chapter of the Bankruptcy Code.") (citing *In re Harper-Elder*, 184 B.R. at 408)).

other chapter under the Code (other than chapters 9 and 12), where debtors can be brought into bankruptcy against their own free will.

Additionally, chapter 13 debtors have the exclusive right to draft and file a plan of reorganization. *See* 11 U.S.C. § 1321. *See also* 8 Collier on Bankruptcy ¶ 1321.01 ("The exclusive right on the part of the debtor to file a chapter 13 plan is in keeping with the voluntary nature of chapter 13 relief."). The Amended Plan was drafted by Debtors in their Case. By the Amended Plan, Debtors propose to pay the IRS, among other creditors, to the best of their abilities and in a manner that facilitates their financial recovery. Debtors have not been ordered to pay the IRS. The IRS has not seized any of Debtors' assets or garnished Debtors' wages. The mere presence of the bankruptcy court or the fact that the IRS filed a claim does not amount to a seizure or an act to obtain funds against Debtors' will. In the case at bar, Debtors have voluntarily proposed to pay the IRS with the Proceeds. To categorize such a payment as involuntary would not only go against the very definition of the word, it would also go against the very nature of a chapter 13 proceeding.

2. *The Asset in Question is Exempt*

It is important to recognize that in the case at bar, the Proceeds stem from the sale of an exempt asset. Therefore, Debtors' application of the Proceeds would not frustrate confirmation of Debtors' Amended Plan. To achieve confirmation, Debtors' Amended Plan must meet the requirements of section 1325, also known as the "best interest of creditors test."

Section 1325(a)(4) states:

(a) Except as provided in subsection (b), the court shall confirm a plan if-

…

16

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325.

Debtors properly claimed the Homestead as an exempt asset in their bankruptcy schedules. Debtors' Schedule C, docket no. 1. Because Debtors' Homestead has been properly claimed as exempt, the Proceeds stemming from the sale would likewise be exempt for the six month window provided in Texas Property Code section 41.001.[37] It follows that the Proceeds would not be taken into account in the best interest of creditors test.[38] Therefore, the application of Proceeds from the sale of the Homestead would not disturb Debtors' goal of plan confirmation and success in their Case.

### III. Conclusion

For the reasons discussed above, *Energy Resources* applies to Debtors' Case and the court may direct the IRS to allocate payments at the court's discretion. Debtors have met their burden in showing Debtors' designation of the Proceeds is necessary to their effective reorganization. Additionally, even if *Energy Resources* is not applicable to the Case, Debtors' payment of the Proceeds is voluntary. Therefore, in accordance with the IRS' policies and procedures, Debtors are allowed to designate the voluntary Proceed payments as provided in the Brief.

It is so ordered.

### ### END OF MEMORANDUM OPINION AND ORDER ###

---

[37] The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale. TEX. PROP. CODE ANN. § 41.001. As previously stated, the Order was entered on September 22, 2014. Accordingly, the six month window has not yet expired.

[38] *In re Garcia*, 499 B.R. 506, 510 (Bankr. N.D. Tex. 2013), *aff'd sub nom. Garcia v. Bassel*, 507 B.R. 907 (N.D. Tex. 2014) ("Only property that could be liquidated to pay creditors in a chapter 7—that is, nonexempt property of the estate—need be considered in the hypothetical liquidation test.").